Belknap,
No. 5791.

JAMES W. MURRAY & a.

v.

ALFRED W. KING & a.

Argued September 4, 1968.
Decided October 1, 1968.

*Wescott, Millham & Dyer* ( *Mr. Peter V. Millham* orally ), for the plaintiffs.

*Winer, Lynch & Gormley* and *Robert W. Pillsbury* ( *Mr. Pillsbury* orally ), for the defendants.

GRIMES, J.   Petition seeking the establishment of the boundary line between land of the plaintiffs and land of the defendants and injunctive relief against the defendants' continuing encroachments upon the land of the plaintiffs situate on the shore of Lake Winnipesaukee in Meredith, New Hampshire. The plaintiffs own land in Meredith adjoining and to the north of land owned by the defendants. Both lots are bounded on the east by Lake Winnipesaukee and on the west by Bay Shore Drive. The dispute is over the location of the westerly end of the common boundary on Bay Shore Drive. Its location on the lake end is not in dispute.

The plaintiffs' land is bounded on the north by land of one Farland. All three lots were conveyed with reference to a plan of lots carved out of land of Beharrell, dated May 10, 1956, recorded September 19, 1967. No monuments are mentioned on this plan and no courses are given. The frontages on the road and the lake are shown as exact, while the sidelines are shown as " more or less. "

The deeds to all three lots ( Murray, King and Farland ) give the frontages as exact distances but the sidelines are "more or less" as shown on the plan. Courses are given only in general terms ( northerly, southwesterly, etc. ). The deeds to the Murray and King lots refer to iron pins at each corner but the deed to the Farland lot does not.

The Murray lot was conveyed to them by one Smith by deed dated October 27, 1961, by description identical to that in the deed from Beharrell to Smith dated May 29, 1959. The Kings acquired their lot from Beharrell by deed dated June 6, 1959. The deed from Beharrell to Farland is dated August 9, 1958.

The Trial Court ( *Keller,* J. ) found that when the Smiths acquired what is now the Murray lot, there were wooden stakes at each of the four corners. Subsequently, the stakes on Bay Shore Drive disappeared and the ones on the lake were replaced by iron pipes by Mr. Smith. In 1965, a surveyor named Collard made a survey of the area for the town and placed iron pins along the street at what he determined to be the boundary lines of the lots. The iron pin placed by Collard to mark the street end of the disputed boundary was found by the Court to be 7.5 feet northerly of the point where the wooden stake had been. The Court found the wooden stake to have been the true bound and ordered the Kings to remove certain walls and to return the land to its prior grade as requested in plaintiffs' petition. It also denied defendants the affirmative relief prayed for in their answer based on an alleged change in the flow of surface water because of changes in grade. It is the contention of the defendants that their motion to dismiss made at the end of the plaintiffs' case should have been granted and that the findings of the Court as to the location of the disputed boundary are unsupported by the evidence.

We disagree with both contentions and affirm the decree of the Trial Court.

Mr. Smith testified that before he purchased the lot now owned by plaintiffs, he was shown the bounds of the lot by an agent for Beharrell and that the corners were marked by wooden stakes in the ground. He further testified that at the time he made his final payment, he inquired about the iron pins referred to in the deed and was told that weather had prevented their being put in place but that it would be done. This was sufficient evidence to support a finding that the corners of the lots were

fixed by the wooden stakes and that it was the intention of the grantor to replace them by iron pins as stated in the deeds. The wooden stakes at the shore were replaced by iron pins and defendants do not dispute that they properly mark the boundaries at the shore. The existence of wooden stakes at the lot corners was also confirmed by the testimony of one Solomon who built the Farland house. The Trial Court's determination that the wooden stakes which were intended to be replaced by iron pins as called for by the deeds constituted monuments which controlled the location of the boundaries of the lots was warranted by the evidence. *Harmon* v. *Kennett Co.,* 103 N. H. 219; *Fagan* v. *Grady,* 101 N. H. 18.

The evidence also supported the finding that the original wooden stake which marked the westerly end of the disputed boundary was located 7.5 feet southerly of the iron pin installed by Collard. Mr. Smith testified that when he built the cottage now owned by Murray, the original wooden stakes were in place at the road and that he ran a string between the one at the shore and the one at the street along the now disputed boundary and that he then measured five feet northerly to establish the corner of the cottage.

Mr. Solomon testified that when he built the Farland cottage, the stakes at the ends of the line between that lot and the now Murray lot were in place and that he established the corner of that cottage by measuring five feet north from a string which he ran between the two stakes. This evidence would support a finding that the southerly sideline of the Murray lot could be reconstructed by measuring five feet southerly from the corner of the cottage on that lot and that the northerly sideline could be established by measuring five feet southerly from the corner of the Farland cottage.

Lines run between the pins on the shore and those placed on the road by Collard run 14 inches from the Murray cottage and 24-25 inches from the Farland cottage. Testimony of one Hyde, an engineer, would support a finding that the Collard pins had been established by running the lines from the pins on the shore at the same angle to the cord between the shore pins as is shown but not stated on the original plan referred to in the deeds. The record indicated this method is subject to substantial risk of error. In any event the actual location of the wooden stakes once determined by the Court would control over courses even if they had been stated in the deeds or on the

plan. *Fagan* v. *Grady,* 101 N. H. 18; *Hall* v. *Davis,* 36 N. H. 569; *Harmon* v. *Kennett Co.,* 103 N. H. 219.

The evidence, therefore, supported the findings and rulings of the Trial Court and the motion to dismiss was properly denied.

*Exception overruled.*

All concurred.